**These Findings of Fact and Conclusions of Law
Are Not Appropriate for Publication**

FILED

OCT 11 2006

KT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 05-10002-A-7
                                         DC No. RWR-1
DDJ, LLC,

                    Debtor.
_____/

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING MOTION TO APPROVE COMPROMISE OF CONTROVERSY

A hearing was held September 13, 2006, on the motion by
Traner & Taft, Inc. ("T&T") to approve a compromise between T&T
and the chapter 7 trustee (the "Trustee").  Joe Flores opposed
the motion.  Following the hearing, the court took the matter
under submission.  This memorandum[1] contains findings of fact and
conclusions of law required by Federal Rule of Bankruptcy
Procedure 7052 and Federal Rule of Civil Procedure 52.  This is a
core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (O).
The legal requirements for approval of compromises.

Federal Rule of Bankruptcy Procedure 9019(a) states "on
motion by the trustee and after notice and a hearing, the court

_____

[1]These Findings of Fact and Conclusions of Law Are Not
Appropriate for Publication.

1

158

may approve a compromise or settlement." The Ninth Circuit Court of Appeals has outlined the factors a bankruptcy court should consider in deciding whether to approve a settlement. <u>In re Woodson</u>, 839 F.2d 610 (1988); <u>In re A & C Properties</u>, 784 F.2d 1377 (1986). Although the <u>A & C Properties</u> case was decided under the Bankruptcy Act of 1898, its reasoning is still applicable to the Bankruptcy Code that governs these cases.

Although a bankruptcy court has great latitude in approving compromises, its discretion is not unlimited. The court may approve a compromise only when that compromise is "fair and equitable." <u>In re Woodson</u> at 620; <u>In re A & C Properties</u> at 1380-81. The moving party has the burden of persuading the bankruptcy court that the compromise is fair and equitable and that the court should approve it. <u>In re A & C Properties</u> at 1381.

The two decisions agree that in determining whether a compromise is fair and equitable, a bankruptcy court must consider four factors. These factors are:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and]

(d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

While the bankruptcy court should give "due deference" to objections by creditors, such objections are not controlling. <u>In re A & C Properties</u> at 1832.

In deciding whether to approve a proposed compromise, a

2

bankruptcy court should not substitute its judgment for that of the trustee as the settling party. <u>In re 110 Beaver Street Partnership</u>, 244 B.R. 185, 187 (Bankr. D. Mass. 2000). That Massachusetts bankruptcy court phrased the court's job as follows:

> "In sum, the Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the 'range of reasonableness' and thus is not an abuse of his or her discretion."

<u>Id.</u>

<u>The compromise and the background facts.</u>

DDJ, LLC was formerly known as Fruit Marketing Investment Company, LLC. In approximately 1998, the owners of Fruit Marketing Investment Company, LLC and Fruit Marketing, Inc.[2] decided to sell the businesses. T&T agreed to buy Fruit Marketing, Inc. and Fruit Marketing Investment Company, LLC. As part of that transaction, T&T wanted to use the name Fruit Marketing of California, and so the sellers agreed to change their names to DDJ, Inc. and DDJ, LLC. T&T paid an initial cash down payment of $500,000 and the remaining balance was paid through secured promissory notes.

After the sale closed, disputes arose. T&T initiated contractual arbitration proceedings against DDJ, Inc. and DDJ, LLC, seeking damages for fraud and negligent misrepresentation concerning the purchased assets. An arbitration panel issued a tentative award against DDJ, Inc. and DDJ, LLC. T&T was awarded

---

[2]Fruit Marketing, Inc. is now known as DDJ, Inc. DDJ, Inc. is a debtor in a separate chapter 7 case.

damages for its out of pocket losses of $713,000 against DDJ,
LLC.   In the arbitration, DDJ, LLC had made counterclaims against
T&T.   However, the tentative award denied the counterclaims
without prejudice.[3]  In any event, even if the Arbitrators' Award
had allowed the claims of DDJ, LLC, the two together were less
than the $713,000 awarded to T&T.

But this was not the only litigation.  DDJ, Inc. and DDJ,
LLC filed a complaint against Norman S. Traner and Steven Taft on
their guarantees of the obligations of T&T in the purchase
agreement (the "Guaranty Action").  Additionally, Fruit Marketing
of California, Inc., Norman Traner, and Steven Taft, filed a
complaint against Dennis Hagobian, Dennis Vartan, and Russell
Davidson for fraud in connection with the purchase transaction
(the "Fresno Action").   This complaint alleges that defendants
Habogian and Vartan and Davidson defrauded T&T and its owners in
connection with the sale agreement.

In 2003, the parties entered into a Settlement Agreement and
Mutual Release of Claims (the "Settlement Agreement").   The
Settlement Agreement is between Dennis Hagobian, Dennis Vartan,
Russell Davidson, DDJ, Inc., and DDJ, LLC on the one hand and

---

[3]A copy of the "Arbitrators' Second Interlocutory Opinion
and Tentative Award" (the "Arbitrators' Award") is attached to
the motion.   There is some ambiguity about the counterclaims of
DDJ, LLC.   Page 3 of the Arbitrator's Award reflects that there
was a claim in the amount of $178,329.40 on account of the note
and security agreement attached as Exhibit 7 to Exhibit 111.   It
also reflects that DDJ, LLC sought the amount of $243,148.53 on
account of the note secured by deed of trust attached as Exhibit
8 to Exhibit 111.   In the "Tentative Award" at page 7, the
Arbitrators state that the counterclaims of DDJ, LLC are denied
without prejudice as to claims for breach of the Exhibit 111-3
and 111-8 notes.   No reference is made to the Exhibit 111-7 note.

1  Norman Traner, Steven Taft, Taft & Traner, Inc., Fruit Marketing
2  of California, Inc., and others, on the other hand.  The
3  Settlement Agreement reflects that it is in settlement of the
4  Fresno Action and the arbitration claim.  It is a complete
5  settlement of all claims among the parties.  In the Settlement
6  Agreement, it is agreed that all promissory notes and security
7  agreements signed by any of the Taft and Traner parties are
8  cancelled and reconveyed.

9      However, in connection with the sale and its obligations to
10 DDJ, LLC under the sale, T&T had executed a note in favor of DDJ,
11 LLC secured by real property of T&T.  It was the understanding of
12 the parties that pursuant to the Settlement Agreement and the
13 Arbitration Award, the deed of trust would be reconveyed.
14 However, before the deed of trust was reconveyed, the chapter 7
15 case was filed.  Thereafter, T&T attempted to refinance the real
16 property and learned that the deed of trust had not been
17 reconveyed.

18      After T&T contacted the Trustee, the Trustee investigated
19 the matter.  The Trustee concluded, following an investigation,
20 that the deed of trust should be reconveyed.  The Trustee's
21 declaration in support of the motion states:

22         "Over the last several months, I have investigated the
           above, by reviewing the original arbitration award and the
23         subsequent settlement agreement.  In addition, I had several
           meetings, conference calls and telephone calls with counsel
24         for T&T as well as with debtor's counsel from the original
           lawsuit.  I have concluded that with respect to the issues
25         with T&T, this estate does not hold any viable claims
           against T&T and that there is no reason why the debtor
26         should not execute the reconveyance as provided for in the
           settlement agreement.
27
           T&T arguably could have a claim against the estate for
28         failure of the Debtor to execute the reconveyance.  While

                                    5

the estate will not receive anything of value from reconveyance, it appears that none of the former officers of the debtor are willing to execute the reconveyance. Thus, I have agreed to execute the reconveyance provided the court authorizes me to do so."

In his opposition, Joe Flores asserts that in the Settlement Agreement, assets were fraudulently transferred by individual owners of DDJ, LLC and DDJ, Inc. According to Flores,

"The tentative award approved the American Arbitration Association (hereinafter "A.A.A.") to DDJ Entities, in an amount of $1,741,158.45 that in actuality became part of the Bankruptcy Estates of DDJ Entities, was fraudulently transferred as an assurance that Norman S. Traner and Steven K. Taft would guarantee that the individual owners of the DDJ Entities will not be prosecuted for the fraud perpetrated by the individuals as the alter egos of DDJ Entities . . .

The transfer of $1,741,158.45 by DDJ Entities owner's, [sic] was indeed fraudulent and was done solely to protect the individuals [sic] assets due to the complaint filed by Transfer & Taft. Moreover, the fraudulent transfer of the above mentioned sum of $1,741,158.45 clearly reflects and is indicative of a non bona fide purchase by Traner & Taft, giving more assurance to this Court that the $1,741,158.45 is clearly property of the DDJ Entities Estates, and should have been harnessed and transferred into cash, . . ."

Thus, Flores is apparently asserting that the arbitrators' opinion, which was that T&T had sustained a total out of pocket loss in the purchase and sale in the amount of $2,300,000, of which 31% or $713,000 was attributable to DDJ, LLC, was incorrect. He also argues that in giving up that amount of property to T&T and releasing the principals on their guarantees, the award and the Settlement Agreement resulted in a fraudulent transfer. In Joe Flores' view, this is a transfer that the trustee should be pursuing and seeking to avoid.

Analysis and conclusion.

The chapter 7 trustee has reviewed the documents in question and traced the transactions. Her testimony is that she has

investigated the transactions.  She has reviewed the original
Arbitrators' Award and the Settlement Agreement.  She has had
meetings, conference calls, and telephone calls with the relevant
counsel and has concluded that the estate does not hold viable
claims against T&T.  She specifically concluded that the estate
has no fraudulent conveyance claims against T&T.

In deciding this motion, it is not for the court to
substitute its judgment for that of the chapter 7 trustee.  It is
rather for the court to determine whether the standards for
approval of a compromise have been met.  In this case, the court
concludes that they have.

First, the court concludes that there is little probability
of success if the chapter 7 trustee pursued a claim against T&T.
The Arbitrators' Award is comprehensive.  The arbitrators
concluded that T&T's loss allocated to DDJ, LLC was $713,000.
The Arbitrators' Award reflects that DDJ, LLC sought from the
principals of T&T the sum of $421,477.93, which comprises the
amount owed on two promissory notes.  Thus, even if the
arbitrators had awarded that amount to DDJ, LLC, which they did
not, it was less than the amounts the arbitrators concluded were
the out of pocket damages of T&T.  While the Arbitrators' Award
was a tentative award, and the parties later entered into a
Settlement Agreement, it is certainly enough for the court to
conclude that the chapter 7 trustee would have a low probability
of succeeding in litigation against T&T.

The difficulty of collection is a factor that in this
instance is not relevant.  There is no evidence before the court
about the solvency or otherwise of T&T.  However, the chapter 7

7

estate does presently hold a deed of trust.  This factor does not weigh one way or the other.

Based on the evidence before it, the court concludes that the litigation would be complex and lengthy and expensive were the chapter 7 trustee to undertake it.  Prior to the bankruptcy being filed, there were two state court actions and an arbitration proceeding.  Absent this agreement, it is likely that T&T would file an adversary proceeding seeking reconveyance of the deed of trust.

Joe Flores is the largest creditor in this bankruptcy case. Thus, it is appropriate for the chapter 7 trustee to give deference to his views.  However, pursuing a claim that would be unlikely to succeed and would be complex, expensive, and time consuming to undertake cannot be in the best interest of creditors.

For all the above reasons, the compromise will be approved. Counsel for T&T may submit a proposed form of order.

DATED: October 11, 2006

WHITNEY RIMEL, Judge
United States Bankruptcy Court

1
PROOF OF SERVICE BY MAIL

2 STATE OF CALIFORNIA       )
                          )  ss.
3 COUNTY OF FRESNO          )

4     I am a citizen of the United States and a resident of the

5 county aforesaid; I am over the age of eighteen years and not a

6 party to the within above-entitled action; my business address is

7 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721.  On

  October 11, 2006, I served the within document on the interested

8 parties in said action by placing a true copy thereof enclosed in a

9 sealed envelope with postage thereon fully prepaid, in the United

10 States mail at Fresno, California, addressed as follows:

11 Joe Flores
   P. O. Box 3086
12 Visalia, CA 93278

13 Beth Maxwell Stratton
   Chapter 7 Trustee
   P. O. Box 3930
14 Pinedale, CA 93650

15 James B. Betts, Esq.
   BETTS & WRIGHT
16 P. O. Box 28550
   Fresno, CA 93729-8550

17 Henry D. Nunez, Esq.
   4478 W. Spaatz Avenue
18 Fresno, CA 93722

19 Office of the United States Trustee
   2500 Tulare Street
   Suite 1401
20 Fresno, California 93721

21     I certify (or declare), under penalty of perjury, that the

22 foregoing is true and correct.  Executed on October 11, 2006, at

23 Fresno, California.

24
                          _____
25                        Kathy Torres, PLS

26

27

28

9