



**FILED**

FEB 28 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 05-10001-A-7 |
| | DC Nos. JF-11; CF-7;  HDN-1 |
| DDJ, INC. | |
| Debtor. | |
| _____/ | |
| In re | Case No. 05-10002-A-7 |
| | DC Nos. CF-6; CF-7; CF-8 |
| DDJ, LLC | |
| Debtor. | |
| _____/ | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING (1) MOTION FOR ORDER INSTRUCTING TRUSTEE TO FURNISH ALL
INFORMATION CONCERNING ADMINISTRATION OF ESTATE AND TRUSTEE'S
REQUEST/COUNTERMOTION TO HAVE JOE AND CONNIE FLORES DECLARED
VEXATIONAL LITIGANTS (JF-11); (2) THE MOTION FOR COMPENSATION FOR
HENRY NUNEZ, AS SPECIAL COUNSEL TO THE CHAPTER TRUSTEE IN DDJ, INC.
(HDN-1); (3) THE CONTINUED MOTION TO VACATE COURT ORDER DATED APRIL 9,
2011 AS VOID IN THE DDJ, INC. CASE (CF-7); (4) THE MOTION TO VACATE MARCH 9,
2011 COURT ORDER IN THE DDJ, LLC CASE (CF-6); (5) THE MOTION TO VACATE
ORDER DATED APRIL 9, 2011 IN THE DDJ, LLC CASE (CF-7); AND (6) THE MOTION
TO REMOVE TRUSTEE IN THE DDJ, LLC CASE (CF-8)

These findings of fact and conclusions of law issued in both the DDJ, Inc. case and in the

DDJ, LLC case will address numerous motions. Most of those motions were filed by Joe and/or

Connie Flores. Two of them were filed by others. The motions filed by Joe and/or Connie

Flores include in the DDJ, Inc. case the motion of Joe Flores for order instructing trustee to

furnish all information concerning administration of the estate (JF-11). Also in the DDJ, Inc.

case, Connie Flores filed a motion to vacate court order dated April 9th as void. That motion is

docket control number CF-7.

Other motions being addressed in these findings of fact and conclusions of law in the DDJ, Inc. case are the motion of the trustee filed as a countermotion to the motion of Joe Flores for an order instructing the trustee to furnish information. The trustee's countermotion requests that the court declare Joe and Connie Flores to be vexatious litigants.

Additionally, in the DDJ, Inc. case, Henry Nunez, special counsel for the chapter 7 trustee, has filed a motion for compensation. That motion is docket control number HDN-1.

In the DDJ, LLC case, the court will consider in these findings of fact and conclusions of law three motions filed by Connie Flores. Thee first is motion to vacate March 9, 2011 court order. This is docket control number CF-6. The next motion is motion to vacate order dated April 9, 2011. This motion is docket control number CF-7. Finally, the court will consider in the DDJ, LLC case the motion by Connie Flores to remove trustee. That motion is docket control number CF-8.

The court has decided to address these various motions together in these findings of fact and conclusions of law. The DDJ, Inc. case and the DDJ, LLC case were filed in 2005. Since that time, there has been a great deal of litigation in both DDJ cases as well as in the related case of Enoch Packing Company, Inc. ("Enoch Packing"), Case No. 02-17736. This litigation has resulted in numerous appeals. At one point, the parties entered into a settlement. Then Mr. and Mrs. Flores decided to challenge the settlement. The litigation claims that constituted the property of the two DDJ estates have been sold by the trustee.

It is time for the litigation in these two cases to end. It is time for these matters to be put to rest. In the court's view, nothing can be gained by any party through continued litigation. Therefore, the court will in these findings of fact and conclusions of law discuss the background of the cases that led to the litigation between the parties. The court will also address separately the factual and legal issues raised in the motions before it.

These matters are core under 28 U.S.C. § 157(b)(2)(A) and (O). This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

The court will first describe the history of these cases and then address each motion

1    separately.

2         In 1999, Joe Flores had sued DDJ, Inc. and DDJ, LLC in the United States District Court

3    for the Eastern District of California (the "District Court"). That case became known as "Flores

4    I."

5         Dennis Hagobian was an officer and director of DDJ, Inc., and Victoria Hagobian was a

6    nominal director of DDJ, LLC for a time. In the course of the Flores I litigation, Mr. Flores

7    attempted to add Dennis Hagobian as a defendant.

8         Eventually, in 2004, judgment was entered against the two debtor DDJ entities, but not

9    against any individual defendant. Mr. Flores then began to try to collect on the judgment. The

10   debtors did not have the money to pay.

11        Mr. Flores then filed suit against the Hagobians in 2004 in the District Court, claiming

12   they were liable for the DDJ judgment on alter ego grounds. That lawsuit became known as

13   "Flores II."

14        He then filed another action in 2005 against Emerick and Fike, asserting that they were

15   liable on fraudulent transfer grounds, and that became known as "Flores III."

16        DDJ, Inc. and DDJ, LLC filed their petitions for bankruptcy in January 2005.

17        Flores I, II, and III were stayed until the trustees for each of the debtors could settle their

18   disputes with Mr. and Mrs. Flores over who owned the Flores I alter ego claims and the Flores II

19   fraudulent transfer claims.

20        In the related case of Enoch Packing, Inc., Case No. 02-17735 ("Enoch Packing"), Mr.

21   Flores then filed an adversary proceeding against the debtors and Enoch Packing, among others,

22   alleging that the Floreses should stand as priority creditors in the Enoch Packing case on the basis

23   of asserted Perishable Agricultural Commodities Act ("PACA") violations. That adversary

24   proceeding (Adv. 05-1297) became known as "Flores IV."

25        It is worth taking time to discuss the Enoch Packing case and the claims therein, because

26   they relate to the background here. In the adversary proceeding known as Flores IV, the court

27   issued findings of fact and conclusions of law regarding the motions of various defendants to

28   dismiss the adversary proceeding. Those findings of fact and conclusions of law were filed

3

1  February 3, 2006, as Docket No. 155.  The court's decision was eventually affirmed by the
2  District Court and by the Ninth Circuit Court of Appeals.

3      This litigation began when Mr. and Mrs. Flores filed a lawsuit against various defendants,
4  including the two DDJ's, in District Court in 1999.  This is the action referred to in these
5  findings as "Flores I."  Mr. and Mrs. Flores contended in that action that various defendants had
6  violated various provisions of PACA and other laws.  The District Court dismissed a number of
7  the claims, but the matter on the remaining claims eventually went to trial.  Following a jury trial,
8  the jury returned a special verdict for plaintiffs Joe and Connie Flores against defendants DDJ,
9  Inc. and DDJ, LLC.  The special verdict addressed solely the liability of DDJ, Inc. and DDJ, LLC
10 to Mr. and Mrs. Flores.  Following various post-trial motions, both DDJ, Inc. and DDJ, LLC
11 filed their bankruptcy cases in 2005.

12      The Enoch Packing bankruptcy case began when an involuntary chapter 7 petition was
13 filed against Enoch Packing in August 2002.  In the Enoch Packing adversary proceeding, Mr.
14 Flores asserted that he delivered perishable agricultural commodities to DDJ, Inc. and was not
15 paid. He then asserts that he eventually discovered that DDJ, Inc. had made certain payments to
16 Enoch Packing.  He thus asserted that the funds of Enoch Packing were impressed with a PACA
17 trust.

18      In its findings of fact and conclusions of law of February 3, 2006, in the Enoch Packing
19 adversary,  the court ruled that no PACA trust had been preserved.  As mentioned, that ruling
20 was affirmed by the District Court and by the Ninth Circuit.

21      What this all boils down to is that  Mr. and Mrs. Flores got a judgment against DDJ, Inc.
22 and DDJ, LLC, and have then spent a great deal of time trying to collect on that judgment in
23 various courts and through various proceedings.  For instance, the claims against the Hagobians
24 and others in "Flores II" and "Flores III" were attempts to collect on the underlying judgment
25 from third parties.

26      In 2008, Mr. Flores filed an action in Fresno County Superior Court reiterating and
27 adding to the claims set forth in Flores II.  Then there was a dispute in that action about whether
28 Mr. Flores was a vexatious litigant.

4

1   In 2009, Mr. Flores filed a second action in Fresno County Superior Court repeating, to a

2   greater or lesser extent, the claims that had been made in the Flores I action.

3   Eventually, a settlement was reached among Mr. and Mrs. Flores and the chapter 7

4   trustees. In 2006-2007, a Settlement Agreement was entered into between and among Mr. and

5   Mrs. Flores, Mr. Salven as chapter 7 trustee for DDJ, Inc., and Beth Stratton (then chapter 7

6   trustee for DDJ, LLC). The court had referred the dispute to the Honorable Michael S.

7   McManus, Bankruptcy Judge for the Eastern District of California, as settlement judge.

8   Following meetings with Judge McManus, the parties entered into a settlement agreement, which

9   Judge McManus caused to be put on the record on December 29, 2006. Subsequent to that time,

10  a dispute arose about the settlement agreement, and the parties revised it in a handwritten

11  document. The parties then asked the court to approve it as the September 5, 2007 Settlement

12  Agreement (the "Settlement Agreement"), which incorporated both the agreement reached with

13  the assistance of Judge McManus and the handwritten document.[1]

14  However, even after the Settlement Agreement was entered into, the litigation continued.

15  Mr. and Mrs. Flores asked the court to vacate the order approving the September 5, 2007

16  Settlement Agreement. They also asked the court to remove James Salven as chapter 7 trustee in

17  the DDJ, Inc. case and to reconsider an order approving sale of property that consisted of the

18  estate's litigation claims. The order entered June 8, 2011, in connection with the Findings of

19  Fact and Conclusions of Law referred to at Footnote 1, denied all those motions.

20  More detail about the sale of the litigation claims is appropriate, Again, quoting from the

21  June 8, 2011 Findings of Fact and Conclusions of Law:

22  "A hearing on the motion to approve the sale of the claims had been held December 16,

23  2010. The court took the matter under submission and put its Findings of Fact and Conclusions

24  of Law on the motion to approve the sale on the record on March 9, 2011. An order was entered

25  on April 9, 2011. The motion for reconsideration was filed April 26, 2011, under Federal Rule

26

27  [1]The summary set forth above is taken from the court's Findings of Fact and Conclusions

28  of Law entered June 8, 2011, and docketed as Docket No. 384 in the case.

5

of Bankruptcy Procedure 9023; Federal Rule of Civil Procedure 52(a)(5); and Federal Rule of Civil Procedure 60(b)(3), (4), (6), and (d)(3).

The order granting sale of litigation claims states:

"1. The Motion for Sale of Litigation Claims Pursuant to 11 U.S.C. § 363(b) filed by James E. Salven, as Chapter 7 Trustee for the Estate of DDJ, Inc., Case No. 05-10001, and pursuant to the December 29, 2006 Settlement Agreement previously approved by this Court, as the representative of the bankruptcy estate of DDJ, LLC, Case No. 05-10002, is granted;

2. The bankruptcy estates of DDJ, Inc. and DDJ, LLC are authorized to sell the litigation claims to the Hagobian Defendants, the Davidson and Hedberg Defendants, and the Yeramian/Vartan Defendants, as prayed for in the Motion and in conformity with Mr. Salven's Further Declaration filed on December 9, 2010 in support of the Motion for the total sum of $60,750.55 consisting of $55,000.00 in cash to be received from the Hagobian and Davidson/Hedberg Defendants, and a waiver of costs incurred by the Yeramian/Vartan Defendants in regards to costs incurred in appeal in relation to the State Court action, commonly referred to as Flores V, bearing Fresno County Superior Court case No. 08-C-CG-035850DSB; and

3. A copy of this order may be filed or lodged in Fresno County Superior Court case No. 08-CE-CG-03585-DSB." "

As set forth in the Findings of Fact and Conclusions of Law filed June 8, 2011, the court denied the motion for reconsideration as well. Mr. and Mrs. Flores each appealed that ruling.

Mr. and Mrs. Flores also sought a stay pending appeal, and by order entered July 27, 2011, the court denied that motion.[2]

Mr. and Mrs. Flores opposed the motion of Mr. Salven's attorney for compensation. The motion was granted, and the order on Mr. Armstrong's fee application was entered November 17, 2011, along with written findings of fact and conclusions of law which may be found at docket entries 533 and 534 in the DDJ, Inc. case. Mr. and Mrs. Flores each separately appealed this order.

Mr. and Mrs. Flores also filed on September 22, 2011, a "Motion to 'Void' March 9, 2011 Court Order Pursuant to Federal Rules of Civil Procedure Rule 60(b)(4) or in the Alternative Federal Rules of Civil Procedure Rule 60(b)(6) in the Court's Granting to James E. Salven as Trustee for DDJ, Inc.'s. Estate the Sale of State Court Litigation Claims Pursuant to 11

---

[2] A transcript of the court's oral ruling is at Docket No. 464 in the DDJ, Inc. case.

6

1    U.S.C. § 363(b)." That motion is Docket Control No. CF-6 in the DDJ, Inc. case. At a hearing

2    on October 19, 2011, the court stated its findings of fact and conclusions of law with respect to

3    that motion on the record and denied the motion. Although the trustee had asked for sanctions,

4    the court declined to issue sanctions against Mr. and Mrs. Flores at that time.

5          An order with respect to that motion was entered October 21, 2011. Mr. and Mrs. Flores

6    each appealed that order.

7    <u>The Matters Under Consideration Now</u>

8          <u>Motion in DDJ, LLC case to vacate March 9, 2011 Court Order ("CF-6").</u>

9          On November 2, 2011, the court heard the motion of Connie Flores in the DDJ, LLC case

10   to vacate order entered March 9, 2011 [sic]. The motion asks that that order be voided "pursuant

11   to Federal Rules of Civil Procedure Rule 60(b)(4) or in the alternative Federal Rules of Civil

12   Procedure Rule 60(b)(6) in re the court's granting to James E. Salven as trustee and/or

13   representative of DDJ, LLC's estate the sale of state court litigation claims pursuant to 11 U.S.C.

14   § 363(b)." The motion was opposed by James Salven as trustee of the DDJ, Inc. case and by

15   The Hagobian Parties.[3] The opposing parties point out that the order in question has been

16   appealed. Thus, the court has no jurisdiction to rule on the motion to vacate or make void the

17   order. Additionally, the opposing parties point out that the order in question is actually the

18   court's order of April 9, 2011, which incorporated the findings of fact and conclusions of law

19   entered into the record at the March 9, 2011 hearing. They additionally point out that Mr. and

20   Mrs. Flores filed a motion to reconsider that April 9 order, and the court denied that motion to

21   reconsider in an order dated June 8, 2011. Thus, the Floreses have not only appealed the order

22   but have already previously asked that it be reconsidered, which request was denied.

23   Additionally, the sale that was the subject of that order has been consummated, and the bell

24   cannot be unrung. The Hagobian Parties request sanctions for what they consider the frivolity of

26        [3]The "Hagobian" parties include Dennis Hagobian, Victoria Hagobian, the Dennis
27   Hagobian Residential Trust, the Victoria Hagobian Residential Trust, Yosemite Technologies,
     Inc., and Rod Christianson, as well as Russell Davidson, William Davidson, and Michael
28   Hedberg. They will be referred to collectively the "Hagobian Parties."

7

1   the motion.

2        Further, the motion denominated as CF-6 is substantially the same as that heard and

3   denied in the DDJ, Inc. case on October 19, 2011. There was no stay pending appeal ever

4   granted.

5        For all the reasons set above, a separate order will issue denying the motion denominated

6   CF-6 in the DDJ, LLC case.

7        Motion of Connie Flores in DDJ, LLC Case to Vacate Order Entered April 9, 2011

8   ("CF-7").

9        A hearing on this motion was set for January 25, 2012. The court determined that oral

10  argument was not necessary, and the matter was taken under submission.[4] The motion to vacate

11  the order entered April 9, 2011 is substantially the same as the motion to "void" the order entered

12  March 9, 2011. In fact, as the Davidson parties pointed out, there was no order entered March 9,

13  2011. Instead, the order entered April 9, 2011 incorporates the findings of fact and conclusions

14  of law set forth on the record at the March 9, 2011 hearing.

15       For all the reasons set forth with respect to CF-6, the motion denominated CF-7 will be

16  denied. A separate order will issue.

17       Motion of Connie Flores in the DDJ, Inc. to Vacate Court Order Entered April 9, 2011 as

18  Void ("CF-7").

19       A hearing on this motion was set for January 25, 2012. The court took the matter off

20  calendar to resolve without oral argument. See Local Bankruptcy Rule 9014-1(h).

21       This is substantially a repeat of arguments raised by Mr. and/or Mrs. Flores in earlier

22  motions. See, motions denominated as CF-6 and CF-7 in the DDJ, LLC case.

23       As the Hagobian Parties point out in their opposition, this is the fifth time the court has

24  seen almost exactly the same motion. In addition to the motions being considered in these

25  findings of fact and conclusions of law, Mr. and Mrs. Flores filed on September 22, 2011, a

26  _____

27       [4]See Local Bankruptcy Rule 9014-1(h).

28

1   motion to "void" March 9, 2011 court order in the DDJ, Inc. case as Docket Control No. CF-6.

2   That motion contained the same arguments as this motion in the DDJ, Inc. case and as CF-6 and

3   CF-7 in the DDJ, LLC case. That motion was denied by order entered October 21, 2011, and an

4   appeal of that order is pending.

5          For the reasons set forth above, the motion denominated CF-7 in the DDJ, Inc. case will

6   be denied by separate order.

7          Motion in DDJ, LLC to Remove Trustee Sheryl Strain ("CF-8").

8          This motion was set for hearing on February 8, 2012, and was removed from calendar to

9   be decided without oral argument. See Local Bankruptcy Rule 9014-1(h).

10         In this motion, Mr. and Mrs. Flores seek to have Sheryl Strain, the trustee in the DDJ,

11  LLC case, removed as trustee on the grounds of incompetence in the actual performance of her

12  duties; failure to investigate the financial affairs of the debtor; failure to take appropriate

13  litigation steps; misappropriation of assets ; breach of written contractual agreement; breach of

14  fiduciary duty; and disobedience of the court ordered Settlement Agreement of September 5,

15  2011; and personal misconduct and abuse of her position.

16         In the motion, Mr. and Mrs. Flores primarily object to the actions take by James Salven as

17  trustee of the DDJ, Inc. case. In the Settlement Agreement, the parties had agreed that Mr.

18  Salven would serve as the "representative" of DDJ, LLC. Here, the moving parties assert that

19  Ms. Strain was acting improperly in allowing Mr. Salven to proceed as her representative. For

20  instance, Mr. Flores says in his declaration filed December 15, 2011:

21       "58. Assets exist, and actions should have commenced long ago to maximize collection
         for the creditors versus a domineering attitude by the exertion of Mr. Salven's position as
22       representative of DDJ, LLC., as authorized by Ms. Strain, in forcing creditors to have to
         accept zero dollars in the offer made by Hagobians to purchase the estate's claim in State
23       Court Action, as well as dismissing with prejudice, meritorious claims against Georgeson
         Defendants brought about because of Ms. Strain's lack of due diligence in expeditiously
24       harnessing, safeguarding assets, and turning them into cash for the estate. Ms. Strain, as
         trustee for DDJ, LLC. has had knowledge of all ongoing illicit activities by Mr. Salven as
25       her now purported representative of the DDJ, LLC's estate since her appointment as
         interim trustee on November 3, 2010 (DC No. 310)[should be docket number 310]." [
26
         59. Floreses take the position that all illegalities by her representative, Mr. Salven
27       occurred principally because of Ms. Strain's carelessness, procrastination, incompetence
         and unwillingness to perform her duty as trustee as the record in this matter strongly
28       reflects. Accordingly, for those reasons coupled with Ms. Strain's negligence in

                                                    9

performing her duty as trustee, Floreses believe that Ms. Strain has kept her investigation of debtor to a minimal, if at that, and has not had any transcribed deposition 2004 meeting with owners, and members of DDJ, LLC., and never has Mr. Salven, as her representative, thereby precluding Ms. Strain from entering into any sensible and/or meaningful negotiations for settling and/or prosecuting SAC [referring to the Second Amended Complaint in the State Court Action of James E. Salven, et al., vs. Dennis Hagobian, et al], which is precisely why Mr. Salven as Ms. Strain's representative conspired with Georgeson Defendants, to fraudulently transfer $1,750,000.00 that belonged to debtor as is further discussed herein below."

Mr. and Mrs. Flores further assert that Ms. Strain failed to perform her duties because she does not have any documents to give them at their request.

In response to the motion, Sheryl Strain filed a declaration and an opposition. In her declaration, she observes that she was appointed successor trustee on or about November 3, 2010. At that time, most of the administration of the case had been completed. She reviewed the dockets in the case and in the DDJ, Inc. case. She attended various hearings and reviewed pleadings as they were filed. She discussed the case with the attorney for the DDJ, LLC trustee and with the attorney for the DDJ, Inc. trustee and with Mr. Salven. She observes that the laboring oar in both cases was being carried by Mr. Salven pursuant to the Settlement Agreement. She states that it was clear no funds would be available in the estate to pay unsecured creditors or even to pay the administrative claims of the attorney for the trustee. Based on her analysis, she concluded that unsecured creditors were unlikely to receive any funds.

Finally, she states that she does not oppose the motion to remove her as trustee. She observes that if it were not for the pending appeals, she would be able to close the case. While she is willing to be removed as trustee in the DDJ, LLC case, she objects to her removal as trustee in any other matter for which she serves as trustee. She also states:

"5. The majority of the administration of DDJ, LLC case was performed and completed by the previous Trustee, Beth Stratton. When I was assigned the case, the laboring oar was being carried by James Salven, the Trustee in the DDJ, Inc. case, pursuant to a December 2006 settlement that was brokered by Judge McManus, agreed to by the movants in the motion to have me removed, approved by this Court, and was affirmed by this Court again in September 1007. That part of the agreement was reached prior to my assignment and was an effort to reduce administrative costs in the two estates. After my assignment as successor trustee, there was little for me to do other than to review the dockets in both cases, attend certain hearings for observation, review pleadings as they were filed, and converse with general counsel for the estate of DDJ, LLC; general counsel for the estate of DDJ, Inc. and the Trustee for the DDJ, Inc. estate. I filed my report of no distribution in this case after a careful review of the pleadings and numerous conferences with the DDJ, INC, Trustee, his general counsel and my general counsel. It is noteworthy

10

that my general counsel supported my report of no distribution even though he was owed almost $30,000 in fees that would not be paid. It is also noteworthy that the movants herein have filed a Motion to Abandon Claims, the principal assets in this estate, because such claims were burdensome and of inconsequential value to this estate."

The court is not persuaded that any cause exists to remove Sheryl Strain from her position as trustee. This is a no asset case. The trustee is not administering any assets. The case is ready to close, were it not for the appeals pending. Based on the declaration of Ms. Strain and the entire record of these cases, the court is not persuaded that she acted in any way that would justify her removal as trustee from this case. For the foregoing reasons, this motion will be denied by separate order.

Motion by Henry Nunez for Compensation as Special Counsel to James Salven in the DDJ, Inc. Case ("HDN-1").

As part of the Settlement Agreement, the parties agreed that Henry Nunez would represent James E. Salven as special litigation counsel for the state court litigation that was the subject of the Settlement Agreement. The court granted an application for approval of Nunez serving as special counsel to Mr. Salven for this litigation. The contingent fee agreement states that Nunez will be compensated for services rendered only if recovery is actually obtained for the client. The concept is that special counsel will first be paid for expenses advanced and then paid 40% of the recovery. Nunez asserts that it is his understanding that Salven sold the litigation claims for the amount of $60,000. Therefore, he asserts that he is owed $24,000 in fees. He also details his expenses and asserts that he is owed $20,265.09 in expenses, for a total of $44,265.09.

The motion is opposed by the DDJ, Inc. trustee. The trustee states that the expenses are unreasonable and that no efforts of Nunez led to any recovery for the estate. In Salven's opinion, Nunez's efforts were ultimately detrimental to the estate.

The fee agreement states that the contingent fee was to be based on a percentage of a "recovery actually obtained for the client." Any recovery was not obtained by Nunez. In fact, the recovery was obtained by Salven's negotiation with the Hagobian parties. Salven asserts that the actions and inactions of special counsel Nunez resulted in Salven's determination that he needed to enter into a settlement with the Hagobian parties. In particular, Salven points out that

11

Nunez's inaction with regard to properly propounded discovery by the defendants resulted in the trustee as the estate's representative being sanctioned by the state court in excess of $6,000, as well as facing evidentiary sanctions which would ultimately have prevented introduction of evidence at trial.

Salven did not even realize until after the sanctions had been awarded and paid that he had been sanctioned, because Nunez failed to tell him. Now, in this fee application, Nunez is seeking reimbursement of the sanctions that he was required to pay on Salven's behalf because of Nunez's failure to inform Salven about the discovery and the progress of the case. The settlement and the sale of the litigation assets was sought and obtained without any assistance from, and as a result of the inaction of, Nunez.

Additionally, Salven objects to the fees for 43,802 copies, at 25 cents per page, which he points out is inappropriate. While Salven asserts that the rate should be 10 to 15 cents per page, in the court's view, a rate of 5 cents per page is more appropriate. Additionally, the court finds it incredible that 43,802 copies were made.

Finally, Nunez represented Mr. Flores in the appeal of the Fresno County Superior Court determination about Mr. Flores being a vexatious litigant. Mr. Salven was never asked to waive this conflict.

For all of the foregoing reasons, the court will not approve any fees. Because Nunez did incur some costs and expenses which are compensable, his costs and expenses will be allowed in the amount of $3,289.59. This is the amount of costs for which reimbursement is requested, less the copy charges and less the sanctions. A separate order will issue.

The motion for order instructing trustee to furnish all information concerning administration of the estate for DDJ, Inc. ("JF-11") .

In this motion, Mr. and Mrs. Flores ask the court to order James Salven, the chapter 7 trustee in the DDJ, Inc. case, to furnish to them information that they have requested concerning administration of the estate. They reference Bankruptcy Code § 704(7) [sic]. Section 704(a)(7) requires the chapter 7 trustee to "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

Mr. and Mrs. Flores observe that, as the largest creditors in the case, they are parties in interest.

To quote from the motion,

"More specifically, Floreses are requesting that the Court order Mr. Salven and/or Mr. Armstrong to immediately surrender any and all information, and documents, including memoranda, notes, telephone calls, and dates of telephone calls, e-mails, faxes with regards to conversations and meetings with C. Russell Georgeson, Justin T. Campagne from the law firm of Campagne, Campagne & Lerner, attorneys Ralph Swanson, Laura Palazzolo, and/or any attorney affiliated with Berliner Cohen, who presently represent some of the purchaser's of State Court Litigation Claims, Michael J. Coffino attorney for Davidson/Hedberg Parties, Russell G. VanRozeboom attorney for Judith Yeramian, and her numerous trusts, and Sandy L. Vartan, and her numerous trusts, and any and all information and/or documents not referenced herein that occurred and were generated by and between Mr. Salven, Mr. Armstrong and/or anyone else within the last year concerning the administration of DDJ, In's. chapter 7 bankruptcy estate."

In response, the trustee agrees that Mr. and Mrs. Flores are parties in interest. However, he observes that he believes Mr. and Mrs. Flores are once again attempting to remove him from office (an attempt that previously failed). He also states that the information they seek includes information previously made available to them. He states that Mr. Flores failed on two occasions to appear at the trustee's office to copy information, when that copying had been previously scheduled. He also states that the approval of the sale of the only asset in the bankruptcy estate, the litigation claims, is now before the Bankruptcy Appellate Panel.

Additionally, Mr. Salven observes that on October 26, 2011, the Ninth Circuit Bankruptcy Appellate Panel issued an order stating that the appeal of the April 11, 2011 sale order was not timely.

Because of what he considers the Floreses' ulterior motives and litigious nature, the trustee asks the court to deny the motion.

The DDJ, Inc. trustee's motion to have Mr. and Mrs. Flores declared vexatious litigants ("JF-11").

In addition to opposing the motion of Mr. Flores for an order instructing him to furnish information, the chapter 7 trustee has also asked the court to declare Mr. and Mrs. Flores to be vexatious litigants. He did this by way of a countermotion. See Local Bankruptcy Rule 9014-1(i). In order to give Mr. and Mrs. Flores an opportunity to respond to the countermotion,

1   the court allowed further argument and set the matter out for further hearing.

2       The DDJ, Inc. chapter 7 trustee states that the course of the case, at least from spring

3   2011 to date, indicates that Mr. and Mrs. Flores are vexatious litigants. In support of this motion,

4   he recites the numerous unsuccessful motions that Mr. and Mrs. Flores have filed in this court.

5   He also points out that Mr. and Mrs. Flores have filed similar motions several times, each of

6   which has been denied.

7       In response, Mr. and Mrs. Flores point out that several of their recent motions are on

8   appeal to the Bankruptcy Appellate Panel and there has yet been no ruling. They then discuss

9   whether the court has subject matter jurisdiction based on their argument that the court's order

10  approving the sale of the litigation claims was void. They also appear to claim that the court has

11  abused its discretion by issuing orders that it should not have issued. Their primary argument is

12  "simply put, the September 5, 2007, settlement agreement entered into and which was further

13  ordered and approved by Bankruptcy Court is 'void' on its face and nullity." (Opposition to

14  countermotion filed November 30, 2011, at page 8.)

15      Mr. and Mrs. Flores also assert that the court's order of April 9, 2011, with regard to the

16  sale of the litigation claims is void.

17      Essentially, in their opposition to the motion to declare them vexatious litigants, Mr. and

18  Mrs. Flores recite their arguments about why the court's orders with respect to the sale of the

19  litigation claims are void.

20      In reply, the chapter 7 trustee observes that Mr. and Mrs. Flores have reiterated many of

21  the arguments they have previously made to this court.

22  The standards for declaring a party in a bankruptcy case to be a vexatious litigant.

23      The court has the power to declare a party a vexatious litigant. Under the All-Writs Act,

24  "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of

25  their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §

26  1651(a). Under this statutory power, the courts have the ability to "'regulate the activities of

27  abusive litigants by imposing carefully tailored restrictions under the appropriate

28  circumstances.'" *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quoting *Tripati v.*

14

*Beaman*, 878 F.2d 351, 352 (10th Cir. 1989)). Section 105(a) of the Bankruptcy Code encompasses the powers of the All-Writs Act in bankruptcy proceedings. *In re Itel Corp.*, 17 B.R. 942, 945 (B.A.P. 9th Cir. 1982). Bankruptcy courts, as courts established by Act of Congress, have the authority to regulate vexatious litigation under 28 U.S.C. § 1651 and 11 U.S.C. § 105. *Goodman v. Cal. Portland Cement Co. (In re GTI Capital Holdings, LLC)*, 420 B.R. 1, 11 (Bankr. D. Ariz. 2009).

The Ninth Circuit has articulated a four-factor standard that a court must examine before it orders a pre-filing restriction against a vexatious litigant:

> (1) the court must give the litigant notice and opportunity to be heard before the
> order is entered;
>
> (2) the court must compile an adequate record for review;
>
> (3) the court must make substantive findings about the frivolous or harassing
> nature of the plaintiff's litigation; and
>
> (4) the court must enter an order that is narrowly tailored to closely fit the specific
> vice encountered.

*De Long*, 912 F.2d at 1147–48. The first two factors are procedural considerations, while the last two are substantive ones, which help the court define who is a vexatious litigant and construct a balanced remedy. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057–58 (9th Cir. 2007) (per curiam).

a.   Notice.

First, notice and an opportunity to be heard must be given to a litigant before a pre-filing order is entered. This is a core requirement of due process. *Molski*, 500 F.3d at 1058 (citing *De Long*, 912 F.2d at 1147); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that due process is satisfied when notice is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and to afford them the opportunity to present their objections").

b.   Adequate Record for Review.

Second, the court must create an adequate record for review. "An adequate record for

1    review should include all the cases and motions that led the [court] to conclude that a vexatious

2    litigant order was needed." *De Long*, 912 F.2d at 1147.  At the minimum, the record must

3    "show, in some manner, that the litigant's activities were numerous or abusive." *Id.*

4        c.    Substantive Findings of Frivolousness.

5        Third, the court must make substantive findings about the frivolous or harassing nature of

6    the litigant's actions. *De Long*, 912 F.2d at 1148.  To make these findings, the court must "look

7    at 'both the number and content of the filings as indicia' of the frivolousness of the litigant's

8    claims." *Id.* (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)).  "An injunction cannot

9    issue merely upon a showing of litigiousness.  The plaintiff's claims must not only be numerous,

10   but also be patently without merit." *Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990).

11       An alternative to the finding of frivolousness is the finding of a pattern of harassment.

12   *De Long*, 912 F.2d at 1148.  There, the court must determine "'whether the filing of several

13   similar types of actions constitutes an intent to harass the defendant or the court.'" *Id.* (quoting

14   *Powell*, 851 F.2d at 431).

15       The Ninth Circuit has also relied on the Second Circuit's five-factor standard from *Safir*

16   *v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986), as a helpful framework for applying the third and

17   fourth De Long factors. *Molski*, 500 F.3d at 1058.  These five factors are

18       (1) the litigant's history of litigation and in particular whether it entailed

19       vexatious, harassing, or duplicative suits;

20       (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an

21       objective good faith expectation of prevailing?;

22       (3) whether the litigant is represented by counsel;

23       (4) whether the litigant has caused needless expense to other parties or has posed

24       an unnecessary burden on the courts and their personnel; and

25       (5) whether other sanctions would be adequate to protect the courts and other

26       parties.

27   *Id.* at 1058 (citing *Safir*, 792 F.2d at 24).  These five factors are intended to answer the ultimate

28   substantive issue: whether a litigant who has a history of vexatious litigation is likely to continue

16

1  to abuse the judicial process and harass other parties. *Safir*, 792 F.2d at 24.

2

3       d.   <u>Breadth of the Order.</u>

4       The final factor requires the court to enter a pre-filing order that is narrowly tailored to

5  the litigant's wrongful behavior. *De Long*, 912 F.2d at 1148. A narrowly tailored order is

6  necessary "'to prevent infringement on the litigator's right of access to the courts.'" *Id.* (quoting

7  *Sires v. Gabriel*, 748 F.2d 49, 51 (1st Cir. 1984)).

8       In *De Long*, the Ninth Circuit held an order was not narrowly tailored when it prevented

9  the litigant from filing any suits or papers in that specific district court without first obtaining

10  leave of court. *De Long*, 912 F.2d at 1148. Similarly, the Ninth Circuit has held in another case

11  that an order was not narrowly tailored when it required the litigant to show good cause before

12  making any request to proceed in forma pauperis. *O'Loughlin v. Doe*, 920 F.2d 614, 618 (9th

13  Cir. 1990). Again, the Ninth Circuit held an order to be overbroad when it required the litigant to

14  obtain leave of court to file any suit when it had been highly litigious with only one group of

15  defendants. *Moy*, 906 F.2d at 470. In that case, the Ninth Circuit modified the lower court's

16  order to limit it to only suits against that specific group of defendants. *Id.*

17       In contrast, the Ninth Circuit has affirmed an order that required the litigant to obtain

18  leave of court before filing suits under Title III of the ADA in that specific district court. *Molski*,

19  500 F.3d at 1061. The order appropriately covered the only type of claim that the litigant had

20  been filing vexatiously—ADA claims. *Id.*

21       Under those standards, the court finds and concludes that Mr. and Mrs. Flores are

22  vexatious litigants in the DDJ, Inc. case and in the DDJ, LLC case.

23       Mr. and Mrs. Flores have had notice and an opportunity to be heard. The court gave them

24  additional time to file argument and evidence in opposition to the motion by the trustee in the

25  DDJ, Inc. case for them to be declared vexatious litigants.

26       The court has compiled the record of the two cases for review, and that record is set forth

27  in these findings of fact and conclusions of law. In addition to the motions discussed specifically

28  herein, attached as Exhibits A (DDJ, Inc.) and B (DDJ, LLC), are summaries of the motions filed

by Mr. and Mrs. Flores in each case and the disposition thereof.

The court finds and concludes that the motions filed by the Floreses since at least 2011 are frivolous.

The court will issue an order that is narrowly tailored.  That order will allow Mr. and Mrs. Flores to file documents with the court if they have obtained permission .  That order will contain the following language:

"1.  Joe Flores, Connie Flores, and each of them, are permanently enjoined from filing any papers in any bankruptcy court in the Eastern District of California (the "Court") in the following cases: DDJ, Inc. and DDJ, LLC  without a prior order of a judge of the Court in accordance with the specific terms of this order.

2.  Any request for an order of the court to file any papers in any contested matter or adversary proceeding in the above cases must include a statement advising the court whether the relief requested has been requested previously by Joe Flores, Connie Flores, or either of them, in either DDJ, Inc. or DDJ, LLC chapter 7 cases.  Further, the request shall state the number of times the request has been made; and the disposition of any previous request for the same relief.  Additionally, any request for an order of the court to file any papers shall state whether a prior request for the same relief has been appealed, and if the appeal has been disposed of, the disposition of the appeal.

3.  Any request for an order of the court to file any papers in any adversary proceeding or contested matter in the above cases shall be accompanied by the following documents: (a) a motion captioned "Motion Pursuant to Court Order Seeking Leave to File;" (b) a copy of this order, certified by this court; and (c) a sworn affidavit by Joe Flores, Connie Flores, or any person acting on their behalf or on behalf of either of them, certifying that the claim has never been raised by him or her on behalf of Joe Flores, Connie Flores, or either of them, in any other court.

4.  Joe Flores, Connie Flores, and each of them, are permanently enjoined from filing any papers in any bankruptcy court in the Eastern District of California in either of the above cases without including in the first paragraph of the first filing with such court, whether it be a complaint or other pleadings, the following statement in bold type:  **Joe Flores, Connie Flores, and each of them, have been enjoined from filing any papers in the cases of DDJ, Inc. and DDJ, LLC in any bankruptcy court in the Eastern District of California without a prior order of a judge of the United States Bankruptcy Court for the Eastern District of California."**

The motion to require the trustee to furnish information.

For the reasons set forth above, this motion will be denied.  This case is ready to close, except for the appeals that are pending.  The trustee has filed a no asset report.  The court has found Mr. and Mrs. Flores to be vexatious litigants.  The motions that the Floreses have filed since have been duplicative and have been denied.  The substantive matters that the Floreses are concerned about are on appeal.  If and when an appeal is resolved in their favor, it may be

18

1  appropriate for the Floreses to seek information from the trustee.  However, there can be no point

2  in their doing so now.

3          For the above reasons, and for all the reasons set forth in the Findings of Fact and

4  Conclusions of Law with respect to the vexatious litigant request, the motion to require the

5  trustee to deliver documents is denied.   Separate orders will issue.

6

7  DATED:    2/28/12

8                                              WHITNEY RIMEL, Judge
                                               United States Bankruptcy Court
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DDJ, Inc. - 05-10001

Exhibit A

| Motion | DCN | Date | Filed By | Disposition | Appeal |
|---|---|---|---|---|---|
| Motion to Remove James Salven as Ch. 7 Trustee | CF-1 | 1/10/11 | Connie Flores; Joinder by Joe Flores | Hearing held 2/16/11 and matter continued to 3/9/11. Hearing held 3/9/11 (transcript filed 3/21/11) and matter submitted. FoF&CoL filed 6/8/11 and motion was denied. | Notice of Appeal filed 6/17/11. Statement of Issues filed 7/7/11. Order Transferring Matter to BAP entered on 10/19/11. |
| Motion for Sanctions | JF-10 | 2/15/11 | Joe Flores; Joinder by Connie Flores | Hearing held 4/6/11 and matter submitted. FoF&CoL filed 6/8/11 and motion was denied. | Notice of Appeal filed 6/17/11. Statement of Issues filed 7/7/11. Order Transferring Matter to BAP entered on 10/19/11. |
| Motion to Reconsider Order Granting Sale of Property | CF-3 | 4/26/11 | Connie Flores; Joinder by Joe Flores | Hearing held 6/1/11 (transcript filed 6/27/11) and matter continued to 6/8/11. Hearing held 6/8/11 and matter submitted for written decision. FoF&CoL filed 6/8/11 and motion was denied. | Notice of Appeal filed 6/17/11. Statement of Issues filed 7/7/11. Order Transferring Matter to BAP entered on 10/19/11. |
| Motion to Abandon Claims | CF-4 | 6/8/11 | Connie and Joe Flores | Hearing held 7/6/11 and hearing dropped because no jurisdiction during appeal. | |
| Motion for Stay Pending Appeal | CF-5 | 6/27/11 | Connie and Joe Flores | Hearing held 7/27/11 (transcript filed 8/4/11) and motion was denied. | |
| Motion to Vacate Order of 3/9/11 | CF-6 | 9/22/11 | Connie and Joe Flores | Hearing held 10/19/11 and motion was denied - no sanctions. | Notice of Appeal filed on 10/24/11. Statement of Issues filed on 10/31/11. Certificate of Record filed 11/17/11. |
| Motion for Order Instructing Trustee to Furnish Information (and Counter Motion by Trustee) | JF-11 | 10/14/11 | Connie and Joe Flores | Hearing held 11/16/11 and matter submitted as to Flores Motion and matter continued to 12/12/11 for further briefing on Countermotion. Hearing held 12/12/11 and matter submitted. | |
| Motion to Vacate Order of 4/9/11 | CF-7 | 12/9/11 | Connie and Joe Flores | Hearing held 1/11/12 and matter continued to 1/25/12 for further briefing. Hearing held 1/25/12 and matter continued for written decision. | |

Exhibit B

DDJ, LLC - 05-10002

| Motion | DCN | Date | Filed By | Disposition | Appeal |
|---|---|---|---|---|---|
| Motion to Vacate Order of 9/5/07 | CF-2 | 1/24/11 | Connie Flores | Hearing held 2/16/11 and matter continued to 3/9/11. Hearing held 3/9/11 (transcript filed on 3/21/11) and matter submitted. FoF&CoL filed 6/8/11 and motion was denied. | Notice of Appeal filed 6/17/11. Statement of Issues filed 7/7/11. Order Transferring Matter to BAP entered on 10/19/11. |
| Motion for Sanctions | JF-10 | 2/15/11 | Joe Flores | Hearing held 4/6/11 and matter submitted. FoF&CoL filed 6/8/11 and motion was denied. | Notice of Appeal filed 6/17/11. Statement of Issues filed 7/7/11. Order Transferring Matter to BAP entered on 10/19/11. |
| Motion to Reconsider Order Granting Sale of Property | CF-3 | 4/26/11 | Connie Flores | Hearing held 6/1/11 (transcript filed 6/27/11) and matter continued to 6/8/11. Hearing held 6/8/11 and matter submitted for written decision. FoF&CoL filed 6/8/11 and motion was denied. | Notice of Appeal filed 6/17/11. Statement of Issues filed 7/7/11. Order Transferring Matter to BAP entered on 10/19/11. |
| Motion to Abandon Claims | CF-4 | 6/7/11 | Connie and Joe Flores | Hearing held 7/6/11 and hearing dropped because no jurisdiction during appeal. | |
| Motion for Stay Pending Appeal | CF-5 | 6/27/11 | Connie and Joe Flores | Hearing held 7/27/11 (transcript filed on 8/4/11) and motion was denied. | |
| Motion to Vacate Order of 3/9/11 | CF-6 | 10/4/11 | Connie and Joe Flores | Hearing held 11/2/11 and matter submitted. | |
| Motion for Order Instructing Trustee to Furnish Information | JF-11 | 10/25/11 | Connie and Joe Flores | Hearing held 12/7/11 and matter continued to 12/12/11. Hearing held 12/12/11 and motion was granted. | |
| Motion to Vacate Order of 4/9/11 | CF-7 | 12/9/11 | Connie and Joe Flores | Hearing held 1/11/12 and matter continued to 1/25/12. Hearing held 1/25/12 and matter continued for written decision. | |
| Motion to Remove Trustee | CF-8 | 12/15/11 | Connie and Joe Flores | Hearing held 2/8/12 and matter continued for written decision. | |

Service list for 05-10001 and 05-10002:


David R. Jenkins, Esq.
P. O. Box 1406
Fresno, CA 93716


Thomas H. Armstrong, Esq.
5250 N. Palm Ave., #224
Fresno, CA 93704


James Edward Salven
P. O. Box 25970
Fresno, CA 93729


Sheryl Ann Strain
575 E. Alluvial Ave., #101
Fresno, CA 93720


Henry D. Nunez, Esq.
4478 W. Spaatz Ave.
Fresno, CA 93722


Joe Flores
P. O. Box 3086
Visalia, CA 93278


Connie Flores
P. O. Box 3086
Visalia, CA 93278


Laura Palazzolo, Esq.
Ten Almaden Blvd., 11th Floor
San Jose, CA 95113-2233


Office of the U. S. Trustee
2500 Tulare Street, Room 1401
Fresno, CA 93721